IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JACQUELINE N. TANZY, § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No.  3:20-CV-3161-X-BH |
| § | |
| ALEJANDRO MAYORKAS, Secretary of § | |
| Homeland Security, § | |
| Defendant. § | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation is *Defendant's Motion to Dismiss*, filed January 8, 2021 (doc. 24).  Based on the relevant filings and applicable law, the motion should be **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

Jacqueline N. Tanzy (Plaintiff), an employee of the United States Citizenship and Immigration Services (USCIS), sues Alejandro Mayorkas,[2] Secretary of Homeland Security (Defendant), for disability discrimination and denial of reasonable accommodation under the Rehabilitation Act of 1973 (Rehabilitation Act). (doc. 8 at 1.)[3]  Her one-paragraph amended complaint alleges that the following conduct amounts to "disparate treatment-discrimination":

1.  My overtime was repeatedly denied between Aug. 2015 thru Oct. 2016.

2.  My annual Performance Plan Appraisal received Oct. 2016 was underrated [and] with disparate treatment.

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.

[2] At the time this lawsuit was filed, Chad R. Wolf was the Acting Secretary of the United States Department of Homeland Security, but Andrew Saul became the Secretary of Homeland Security on February 2, 2021, so he is automatically substituted as a party under Fed. R. Civ. P. 25(d).

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

>   3. My Reasonable Accommodation was untimely with a decision and denied during Apr. 2016 thru Dec. 2016.

(*Id.*)  Attached to her amended complaint is the decision of the Equal Employment Opportunity Commission (EEOC) affirming USCIS' final decision concerning her equal employment opportunity (EEO) complaint. (*Id.* at 2-10.)

According to the EEOC's decision, while an Immigration Services Assistant at USCIS, Plaintiff filed an EEO complaint on December 12, 2016, alleging employment discrimination in violation of Section 501 of the Rehabilitation Act. (*Id.* at 3.)  She claimed to have sustained numerous work-related injuries over the course of her employment that caused her chronic pain in her lumbar region, both hips, her right knee, and her right hand, and that she also had carpel tunnel syndrome. (*Id*. at 4.)  She was placed under restrictions for lifting, sitting, climbing, kneeling, bending, stooping, twisting, pushing, and pulling. (*Id.*)

Plaintiff alleged that she was denied 91 hours of overtime in 2015, and 96 hours of overtime in 2016, although she received 13 overtime approvals for 136 hours in 2015, and eight overtime approvals for 132 hours in 2016.  (*Id.*)  She received the rating of "Achieved Expectations" in her annual performance appraisal in October 2016, but claimed she should have received the rating of "Achieved Excellence." (*Id.*)  She also contended that she was assigned a disproportionate amount of the file processing work, that she did not receive back-up assistance, and that the Reasonable Accommodation Coordinator denied her request for an adjustable standing desk.  (*Id.* at 5.)

On April 16, 2019, USCIS issued a final decision in which it concluded that Plaintiff had failed to prove that it had subjected her to discrimination. (*Id.* at 3.)  She appealed the dismissal of her EEO complaint to the EEOC, and on September 14, 2020, the EEOC affirmed USCIS's final

2

decision. (*Id.* at 3, 7.) Plaintiff then filed this lawsuit on October 16, 2020. (doc. 3.)[4] On January 8, 2021, Defendant moved to dismiss it. (doc. 24.) Plaintiff responded on February 26, 2021, and Defendant replied on March 11, 2021. (docs. 31, 32.)

## II. RULE 12(b)(6)

Defendant moves to dismiss Plaintiff's amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 24 at 6.)

**A.     Legal Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

---

[4] In her response to Defendant's motion to dismiss, Plaintiff states that she received the requested accommodation and is abandoning her reasonable accommodation claim. (doc. 31 at 6.)

3

action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss or in a response to a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007); *Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008). If "matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents attached to a motion to dismiss or to a response to a motion to dismiss "are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003); *see Walch*, 533 F.3d at 293–94 (finding that reliance on documents attached to a response to a motion to dismiss was appropriate where the documents were "sufficiently referenced in the complaint"). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiff attached documents to her amended complaint, including a partial printout of the DHS's website and a copy of the EEOC's decision. (doc. 8 at 2-10.) Because these documents are attached to her amended complaint and are also matters of public record, they are considered part of the pleadings. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 498; *see also Hawkins v. AT&T*, No. 3:12-CV-1173-L, 2013 WL 4505154, at *3 (N.D. Tex. Aug. 23, 2013) ("Documents contained in a Title VII administrative record are public records for which the court can take judicial notice and consider in a motion to dismiss."). Accordingly, it is unnecessary to convert the motion to dismiss into a summary judgment motion.

## B. <u>Discrimination Claims</u>

The Rehabilitation Act provides "the exclusive remedy for a federal employee alleging disability-based discrimination." *Dark v. Potter*, 293 F. App'x. 254, 258 (5th Cir. 2008). Discrimination claims brought under the Rehabilitation Act are governed by the standards applicable under Title I of the Americans with Disabilities Act (ADA). *See Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) ("The language in the ADA generally tracks the language set forth in the [Rehabilitation Act]," and "[j]urisprudence interpreting either section is applicable to both."). To make a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must demonstrate that (1) she has a disability; (2) she was qualified for her job; (3) she worked for a program or activity receiving federal financial assistance; and (4) an adverse employment decision was made solely by reason of her disability. *See* 29 U.S.C. 794(a); *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993). While a plaintiff's complaint need not plead a prima facie case of discrimination in the motion to dismiss context, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), the prima facie elements are not entirely irrelevant, and no plaintiff is exempt from her obligation to allege sufficient facts to state all the elements of her claim, *Puente v. Ridge*, 324 F. App'x 423, 428 (5th Cir. 2009) (citation omitted). *See Dark*, 293 F. App'x at 258 (explaining that courts properly consider the prima facie elements of discrimination under the Rehabilitation Act when evaluating the sufficiency of a complaint at the motion to dismiss stage). The ordinary rules for assessing the sufficiency of a complaint apply. *Swierkiewicz*, 534 U.S. at 511.

### *1. Disability*

Defendant argues that Plaintiff does not include any independent allegation in her pleadings showing that she has a disability. (doc. 24 at 10 n.3.)

6

Under the Rehabilitation Act, an individual with a disability is a person who has a physical or mental impairment which substantially limits one or more of her major life activities, has a record of such an impairment, or is regarded as having such an impairment. *See* 42 U.S.C. § 12102(1); *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010). "Major life activities" include a non-exhaustive list of functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.*

Here, Plaintiff alleges that her disabilities include carpel tunnel syndrome and chronic pain to her lower lumbar, both hips, and left shoulder. (doc. 31 at 4.)[5] Because of these disabilities, she claims to have physical restrictions, including sitting, standing, pushing, pulling, bending, lifting, and keyboarding. (*Id.*) These alleged restrictions implicate her ability to perform manual tasks and work. She also alleges that her "ADA permanent disability" substantially limits her major life activities. (*Id.* at 5.) Plaintiff's factual allegations are sufficient to state a plausible claim that she has a disability under the Rehabilitation Act. *See* 42 U.S.C. § 12102(1).

### 2. *Adverse Employment Action*

Defendant argues that Plaintiff fails to allege sufficient facts to demonstrate that she suffered an adverse employment action. (doc. 24 at 10.)

---

[5]In her response to Defendant's motion to dismiss, Plaintiff includes new factual allegations and asserts new claims for retaliation. (*See* doc. 31.) Because these claims and allegations were raised for the first time in her response, they are not part of the pleadings to be considered for purposes of the motion to dismiss. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473 at *4 n.3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552 at *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). She has not been granted leave to amend her amended complaint to add these claims and allegations, and she has not shown that Defendant consented to an amendment. *See* Fed. R. Civ. P. 15(a)(2). Because the *pro se* response may be liberally construed as a request for leave to amend her amended complaint, the claims and allegations are addressed in an abundance of caution. *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss, in which plaintiff first alleged that she had been willfully discriminated against, should be treated as a motion to amend her pleadings).

An adverse action necessary to state a prima facie case of discrimination includes "only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007); *see also McKay v. Johanns*, 265 F. App'x 267, 269 (5th Cir. 2008) (applying the same definition of "adverse employment action" to discrimination claims under the Rehabilitation Act). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).

### i.  Denied Overtime Requests

Defendant argues that limited denials of requests for overtime do not constitute adverse employment actions to support a claim of employment discrimination. (doc. 24 at 11.)

There is "no precedential authority in [the Fifth Circuit] establishing whether a denial of overtime constitutes an adverse employment action." *Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 397 (5th Cir. 2016). Nevertheless, the Fifth Circuit has found that "[t]he denial of overtime opportunities may, under certain circumstances, constitute an adverse employment action." *Ryerson v. Berryhill*, No. 3:15-CV-3509-S-BK, 2018 WL 4103433, at *9 (N.D. Tex. Aug. 2, 2018), *adopted by* 2018 WL 4101842 (N.D. Tex. Aug. 28, 2018), *aff'd by* 772 F. App'x 102 (5th Cir. 2019) (citing *id.* at 397-98). In *Johnson v. Manpower Pro. Servs., Inc.*, 442 F. App'x 977 (5th Cir. 2011), the plaintiff initially received overtime payment for hours he worked in excess of forty per week but he later stopped receiving the higher hourly wage for overtime hours when his employer changed his status to "overtime exempt." *Id.* at 979. Because the denial of overtime pay related to the plaintiff's compensation, the court held that it was an adverse employment action for purposes of

8

Title VII. *Id.* at 982.  In contrast, in *Hart v. Life Care Ctr. of Plano*, 243 F. App'x 816 (5th Cir. 2007), the plaintiff alleged that his manager discriminated against him by issuing him a disciplinary warning for reporting late to work, denying him a day off, denying a request for overtime, denying him a shift change, and assigning him more difficult tasks than his Hispanic co-workers. *Id.* at 818. The Fifth Circuit found that none of those incidents, including the denial of the overtime request, amounted to an ultimate employment decision. *Id.*  Because the plaintiff failed to demonstrate that he suffered from an adverse employment action, the court affirmed summary judgment on his Title VII discrimination claim.  *Id.*

Here, Plaintiff alleges that her requests for overtime were repeatedly denied between August 2015 and October 2016. (doc. 8 at 1.)  She claims that her 2015 loss of overtime pay benefits was $14,667.20, and her 2016 loss of overtime pay benefits was $14,401.53. (doc. 31 at 4-5)  According to the EEOC's decision, Plaintiff had claimed that she was denied 91 hours of overtime in 2015, and 96 hours of overtime in 2016, but also admitted that she was approved for 136 hours of overtime in 2015, and 132 hours of overtime in 2016. (doc. 8 at 4.)  Accepting her well-pleaded facts as true and viewing them in a light most favorable to her, as required at this stage, Plaintiff has alleged facts showing that she suffered an adverse employment action from the repeated denials of overtime.

Defendant argues that "where a plaintiff has been denied some overtime opportunities but provided others, the denial of selected overtime opportunities does not constitute an adverse employment action." (doc. 24 at 12.)  While courts in this circuit have found that the denial of a single overtime request does not constitute an adverse employment action, none of the cases that Defendant cites addresses the denial of more than one request for overtime. *See Hart*, 243 F. App'x at 818 (finding the one-time denial of overtime is not an adverse employment action); *Belmear v.*

9

*Mary Kay Inc.*, No. 3:98-CV-1389-D, 2000 WL 127282, at *5 (N.D. Tex. Feb. 3, 2000) (same); *Waters v. City of Dallas*, No. 3:11-CV-0540-K, 2012 WL 5363426, at *9 (N.D. Tex. Nov. 1, 2012) (same). Plaintiff's allegations of repeated denials of overtime are more factually similar to those in *Johnson*, in which an adverse employment action was found. *See* 442 F. App'x at 982.

Citing cases outside the Fifth Circuit, Defendant also argues that courts have "repeatedly held that there is no adverse employment action when overtime is not provided because the individual cannot perform the overtime duties based on medical restrictions." (doc. 24 at 12-13.) Those cases are distinguishable because they were decided on summary judgment, however. *See Basch v. Knoll, Inc.*, No. 1:13-CV-76, 2014 WL 911865, at *4 (W.D. Mich. Mar. 10, 2014) (dismissing claim on summary judgment because "Plaintiff's testimony that she was not given overtime after her carpal tunnel surgery is not evidence of an adverse action because she acknowledged that she was on medical restrictions that limited her to 8 hours of work per day"); *Faison v. Vance-Cooks*, 896 F. Supp. 2d 37, 68 (D.D.C. 2012) (granting defendant's motion for summary judgment because plaintiff had failed to present any evidence that the denial of her overtime was motivated by unlawful discrimination when she was on light duty and therefore unable to engage in the manual labor required for the overtime opportunity); *Jones v. Valeo Elec. Sys., Inc.*, No. 06-CV-6026T, 2008 WL 723865, at *5 (W.D.N.Y. Mar. 14, 2008) (dismissing claim on summary judgment as there was no evidence of an adverse employment action when plaintiff was denied overtime because her medical restrictions restricted the hours and type of work she could perform, which would preclude all overtime work). Here, the complaint reflects Plaintiff's concession that she received significant amounts of overtime. Viewing these allegations in the light most favorable to her, as the Court must, they support the inference that medical restrictions did not

prevent her from performing overtime work. Accordingly, Defendant's motion to dismiss the discrimination claim relating to denied overtime should be denied.

### ii. Low Performance Rating

Defendant argues that a lower-than-expected performance review does not constitute an adverse employment action. (doc. 24 at 14.)

An adverse employment action does not include decisions made by an employer that merely limit an employee's opportunities for promotion but do not affect her job duties, compensation, or benefits. *Banks*, 320 F.3d at 575. The Fifth Circuit has long recognized that a negative performance evaluation, alone or even accompanied by an employee's placement on a performance improvement plan, does not rise to the level of an ultimate employment decision. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Douglas v. DynMcdermott Petroleum Operations, Co.*, 144 F.3d 364, 373 n.11 (5th Cir. 1998) (holding that low performance ratings are not considered adverse employment actions); *Price v. Wheeler*, 834 F. App'x 849, 856 (5th Cir. 2020) ("Receiving a low performance evaluation does not alone constitute an adverse employment action."); *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) ("An employer's decision to place an employee on a performance improvement plan is not an adverse employment action."); *see also Young v. Dallas Indep. Sch. Dist.*, No. 3:16-CV-543-N-BF, 2017 WL 4326009, at *3 (N.D. Tex. Sept. 6, 2017), *adopted by* 2017 WL 4326091 (N.D. Tex. Sept. 27, 2017) ("Disciplinary warnings and negative performance evaluations do not constitute actionable adverse employment actions.").

Here, Plaintiff alleges that her annual performance plan appraisal in October 2016 "was underrated [and] with disparate treatment." (doc. 8 at 1.) She alleges that she received an "achieved

11

expectations" rating but that she should have been awarded the rating of "achieved excellence" because she had performed her duties "in an excellence performance manner." (doc. 31 at 2.) As discussed, "negative performance evaluations, even if undeserved, are not adverse employment actions giving rise to actionable discrimination claims." *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 536 (S.D. Tex. 1999), *aff'd by* 224 F.3d 765 (5th Cir. 2000). While Plaintiff contends that the low performance rating resulted in adverse employment actions against her, including non-selection to GS-9 positions, loss of overtime benefit rights, lost "RIF Benefit Points," and an adverse "Demoted Rating" (doc. 31 at 3), it is well established in the Fifth Circuit that an adverse employment action must "rise above having mere tangential effect on a possible future ultimate employment decision." *See Mattern*, 104 F.3d at 708; *Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 360 (5th Cir. 2005) (cautioning courts against expanding the definition of "adverse employment action" to include "events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee-anything that might jeopardize employment in the future") (citation omitted); *see, e.g., Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995) (affirming decision that an employer's denial of a "desk audit" to a female employee is not an adverse personnel action under Title VII, even though the employee claimed that the decision restricted her "promotional opportunities"); *Arrieta v. Yellow Transp., Inc.*, No. 3:05-CV-2271-D, 2008 WL 5220569, at *5 (N.D. Tex. Dec. 12, 2008), *aff'd by* 670 F.3d 644 (5th Cir. 2012) ("[D]isciplinary warnings and negative performance evaluations do not constitute adverse employment actions because they have only a tangential effect, if any, on ultimate employment decisions.").

Because Plaintiff's low performance rating is not an adverse employment action for purposes of discrimination under the Rehabilitation Act, her claim relating to her low performance rating

12

should be dismissed for failure to state a claim.

C. **Retaliation Claims**

As noted, Plaintiff's response asserts new claims of retaliation based on (1) her 2016 harassment complaint against a supervisor and manager and (2) her December 2016 EEO complaint. (doc. 31 at 4.) Defendant contends that even if considered, Plaintiff has failed to exhaust her administrative remedies as to those claims. (*See* doc. 32 at 6.)

The Rehabilitation Act makes it unlawful for employers to retaliate against an individual because she has opposed an unlawful employment practice under the statute, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statute. *See* 29 C.F.R. § 1614.101(b); *see also Shannon v. Henderson*, 2001 WL 1223633, at *3 n.4 (5th Cir. 2001) ("While the Rehabilitation Act contains no parallel language to the ADA provision prohibiting retaliatory discrimination, the Department of Labor has promulgated a regulation under the Rehabilitation Act barring retaliation."). Retaliation claims under the Rehabilitation Act are analyzed under the familiar burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Higbie v. Kerry*, 605 F. App'x 304, 307-08 (5th Cir. 2015); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). A plaintiff establishes a prima facie case of retaliation by showing that: (1) she engaged in activity protected by the Rehabilitation Act;[6] (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse action. *See id.*[7]

---

[6] The filing of a charge of discrimination with the EEOC clearly satisfies the first element. *See Dollis*, 77 F.3d at 781 (explaining that "there can be no question that [the employee's] retaliation claims satisfy the first element of the analysis, filing an administrative complaint is clearly protected activity").

[7] Although a plaintiff is not required to plead the prima facie case of retaliation at the motion to dismiss stage, she must plead sufficient facts on all of "the ultimate elements" of a retaliation claim to make her case plausible. *Jenkins*

The Rehabilitation Act subjects plaintiffs to the same procedural constraints set forth in Title VII, such as administrative exhaustion. *See* 29 U.S.C. § 794a; *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) ("A Rehabilitation Act claimant must satisfy the procedural requirements set forth in Title VII of the Civil Rights Act of 1964."). An employee complaining of discrimination or retaliation under the Rehabilitation Act must therefore exhaust her administrative remedies by filing a charge of discrimination with the EEO division of her agency as a precondition to bringing an action in federal court. *Smith v. Potter*, 400 F. App'x 806, 811 (5th Cir. 2010) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006); *see also Bailey v. Napolitano*, No. 3:11-CV-1110-L, 2012 WL 1658790, at *5 (N.D. Tex. May 11, 2012) (finding that exhaustion of administrative remedies for Title VII and Rehabilitation Act claims was a condition precedent). Courts have routinely held that a plaintiff's complaint is subject to dismissal under Rule 12(b)(6) when the plaintiff "fails to allege exhaustion of administrative remedies." *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979); *see Davis v. Fort Bend Cty*, 893 F.3d 300, 305-07 (5th Cir. 2018) (clarifying that administrative exhaustion is a condition precedent rather than a jurisdictional prerequisite to maintaining a Title VII action); *see, e.g., Johnson v. United States Postal Serv.*, No. 3:15-CV-1081-L-BK, 2016 WL 791076, at *1-2 (N.D. Tex. Jan. 27, 2016) (finding that plaintiff's Title VII claim should be dismissed for failure to state a claim rather than for lack of jurisdiction where the plaintiff failed to allege exhaustion of administrative remedies); *Carr v. United Reg'l Health Care Sys., Inc.*, No. 4:06-CV-194-A, 2006 WL 2370670, at *2 (N.D. Tex. Aug. 16, 2006)

---

*v. State Workforce Comm'n*, 713 F. App'x 242, 245 (5th Cir. 2017) (citing *Chhim v. Univ. of Texas*, 836 F.3d 467, 470 (5th Cir. 2016) (explaining that the prima facie elements for retaliation are helpful in analyzing the sufficiency of the complaint)); *see also Flores v. Select Energy Servs., LLC*, 486 F. App'x 429, 432 (5th Cir. 2012) ("The elements of a prima facie case are helpful, however, in framing what constitutes [a discrimination] claim."); *Avalon Residential Care Homes, Inc. v. City of Dallas*, No. 3:11-CV-1239-D, 2011 WL 4359940, at *8 (N.D. Tex. Sept. 19, 2011) (holding that proving the prima facie case of retaliation is sufficient, but not necessary, to survive a motion to dismiss).

(determining that claims under the ADA and the Rehabilitation Act were subject to dismissal "because [the plaintiff] has failed to allege that he exhausted his . . . administrative remedies . . . ."); *Shabazz v. Tex. Youth Comm'n*, 300 F. Supp. 2d 467, 471 (N.D. Tex. 2003) (dismissing the plaintiff's claim under Rule 12(b)(6) where the plaintiff alleged that he filed a charge but failed to allege that a right to sue letter was issued or received).

If a retaliation claim grows out of an earlier EEOC filing, however, it is "unnecessary for a plaintiff to exhaust administrative remedies prior to urging [that] retaliation claim" in the Fifth Circuit. *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). "The *Gupta* exception allows a plaintiff who has a properly exhausted charge before the court to pursue a retaliation claim that was not presented to the EEOC if the acts underlying the retaliation claim came after, and grew out of, the first EEOC charge." *Ryks v. Dep't of Homeland Sec.*, No. CIV.A. 14-1954, 2015 WL 3455274, at *4 (E.D. La. May 29, 2015). Nevertheless, the Fifth Circuit "has not applied the *Gupta* exception to claims in which both retaliation and discrimination are alleged." *Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269, 273 (5th Cir. 2013); *see Sapp v. Potter*, 413 F. App'x 750, 752-53 (5th Cir. 2011) ("Because the *Gupta* exception is premised on avoiding procedural technicalities, it has only been applied to retaliation claims alone [and not] claims in which both retaliation and discrimination are alleged.").[8]

### 1. 2016 Harassment Claim

Here, Plaintiff alleges that her alleged retaliation "is based on a 2016 Harassment Claim filed

---

[8] Although the Fifth Circuit has noted "that *Gupta* may no longer be applicable after the Supreme Court's decision in [*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002)]," it has not yet reconsidered *Gupta* in light of *Morgan*. *See Simmons–Myers*, 515 F. App'x 2 at 273 n.1. Accordingly, "it remains the law of the Circuit that a claim alleging retaliation for the filing of an earlier EEOC charge need not be separately exhausted." *Taylor v. Tex. S. Univ.*, No. 4:12-CV-1975, 2013 WL 5410073, at *5 n.4 (S.D. Tex. Sept. 25, 2013).

on my Supervisory-Chief, and manager related to my 2016 On The Job Injury." (doc. 31 at 4.) She alleges that "[f]ollowing this harassment claim, I was retaliated against and received disparate treatment from my management[] including but not limited to unfair/under rated Performance Plan Appraisal [ ], but also unapproved/denied overtime benefits." (*Id.*) She does not allege that she asserted this retaliation claim in her December 2016 EEO complaint, it is not reflected in the EEOC's decision, and she does not allege any facts showing that she separately exhausted her administrative remedies with respect to this retaliation claim. While retaliation claims need not be exhausted if they grow out of or stem from an earlier filing of an EEOC charge, the exception is not applicable here because the retaliation allegedly occurred in advance of the December 2016 EEOC filing. *See Gupta*, 654 F.2d at 413-14; *see also Galarza v. Ochsner Health Sys., Inc.*, No. CIV.A. 12-722-JJB, 2014 WL 1431708, at *8 n.5 (M.D. La. Apr. 14, 2014) ("[T]he *Gupta* exception only applies when there is a properly exhausted administrative charge before the court.").[9] Because Plaintiff fails to allege that she administratively exhausted her retaliation claim relating to the 2016 harassment claim, she is precluded from pursuing that claim in this action. *See Pacheco*, 448 F.3d at 788.

  2.   *2016 EEO Complaint*

Plaintiff also alleges that she "was being retaliated against based on my EEO Claim filed on December 29, 2016 and my physical disabilities [ ], due to my physical disability restrictions, limitations, and accommodations [ ]." (doc. 31 at 4.) She does not allege any facts showing that she separately exhausted her administrative remedies with respect to this retaliation claim, however.

---

[9]Even assuming that the "2016 Harassment Claim" was itself an EEOC filing, the *Gupta* exception would not apply because Plaintiff is asserting both a retaliation and discrimination claim. (*See* doc. 31 at 4-5); *see Sapp*, 413 F. App'x at 753 (explaining that the *Gupta* exception does not apply when a retaliation and discrimination claim are "simultaneously alleged").

16

As discussed, a plaintiff is allowed to pursue an unexhausted retaliation claim that grows out of an earlier EEOC charge, but that exception is not applicable when, as here, "both retaliation and discrimination are alleged." *See Simmons-Myers*, 515 F. App'x at 273; *Sapp*, 413 F. App'x at 752-53; *see, e.g., Phipps v. Hous. Auth. of New Orleans*, No. CA 15-3296, 2016 WL 164916, at *4 (E.D. La. Jan. 13, 2016) ("Because the plaintiff's second charge is not limited to a retaliation claim arising out of his first discrimination charge, but instead additionally includes new charges of disparate treatment, *Gupta* does not save these claims from the exhaustion requirement."). Because Plaintiff's retaliation claim relating to the December 2016 EEO complaint is based on both retaliation and discrimination, it falls outside the scope of the *Gupta* exception and must be exhausted before the EEOC.

Because Plaintiff has failed to allege that she has met the precondition for filing suit by exhausting her available administrative remedies, her retaliation claims should be dismissed without prejudice.[10] *See Hoffman*, 596 F.2d at 685 ("A judicial complaint that fails to allege exhaustion of administrative remedies . . . is properly subject to dismissal."); *Carr*, 2006 WL 2370670, at *2 (dismissing *pro se* plaintiff's claims under the Rehabilitation Act for failure to allege exhaustion); *Shabazz*, 300 F. Supp. 2d at 471 (dismissing *pro se* plaintiff's Title VII claim without prejudice where the plaintiff failed to allege exhaustion of administrative remedies in his complaint).

### III. RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED** in part and **DENIED** in part. Plaintiff's discrimination claim based on her low performance rating should be **DISMISSED with**

---

[10] "When a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies." *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 n.5 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997).

**prejudice**, and her retaliation claims should be **DISMISSED without prejudice**. Her discrimination claim based on her denied overtime requests should proceed.

  **SO RECOMMENDED** on this 20th day of July, 2021.

              _____
               IRMA CARRILLO RAMIREZ
               UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

  A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

              _____
               IRMA CARRILLO RAMIREZ
               UNITED STATES MAGISTRATE JUDGE